[No. 18185.   Department Two.—March 29, 1894.]

FRANK P. BEVERLY, RESPONDENT, v. WILLIAM C. BLACKWOOD, APPELLANT.

102  83
137  675

EXCHANGE OF LANDS—AGREEMENT TO SELL—MORTGAGE AS COLLATERAL—CANCELLATION.—Where, upon an exchange of lands, one of the parties agreed to take up certain mortgages on the land received by him, and to sell the land at a certain aggregate price, in tracts to suit purchasers, and to take mortgage security upon the land conveyed by him to the other party, as collateral security to insure the obtaining of the aggregate price agreed upon by sales in the market, until that price should be paid, with an agreement to release the mortgage at any time when that price was received, the person giving such mortgage may maintain an action to cancel it, upon proof of the refusal of the other party to sell the land, or to permit a sale at the price proposed, and proof of his con-

veyance thereof to his daughters by deeds of gift, thus putting it out of his power to sell the land at any price.

ID.—CONTRACT—TIME, WHEN NOT OF ESSENCE. —The general rule of equity is that time is not of the essence of a contract, unless it appears from the terms of the contract, in the light of all the circumstances, that such was the intention of the parties; and where it is not declared in the contract that time shall be of the essence, and there is no limitation of time within which a contract for the release of a mortgage, given as collateral security, must be performed, and no provision that it should become an independent charge upon the land mortgaged, if the land secured to be sold at a certain price was not sold within a limited period, a time fixed in the contract for the sale of the land, is not of the essence of the contract to release the mortgage.

ID.—ESTOPPEL OF PARTY IN DEFAULT.—Where time is of the essence of a contract, and a party agreeing to do an act within the time proposed is the only party in default, such party can take no advantage from his own wrong.

ID.—AGREEMENT TO TAKE UP A MORTGAGE.—An agreement to take up a mortgage, provided the party holding the same will accept his money, must be construed as an agreement to pay the mortgagee all that he is entitled to receive, although the mortgage is not due, and the mortgagee insists upon receiving the full amount of principal and interest, which would be due at maturity of the mortgage.

ID.—EQUITABLE MAXIM.—Equity looks upon things agreed to be done as actually performed in favor of him to whom and against him from whom the performance is due, and will treat the subject matter as to collateral consequences and incidents in the same manner as if the final acts contemplated by the parties had been executed exactly as they ought to have been.

ID.—EVIDENCE—VALUE OF LANDS AT TIME OF EXCHANGE—FRAUD—CONSTRUCTION OF CONTRACT.—Evidence as to the value of lands exchanged at the time of the exchange is admissible and relevant to an issue of fraud connected with the exchange, and also as a circumstance to be considered in construing the contract.

APPEAL from a judgment of the Superior Court of Tehama County, and from an order denying a new trial.

The facts are stated in the opinion.

*N. P. Chipman,* for Appellant.

The agreement in this case was in effect a contract upon a condition precedent. (*Bachman* v. *Meyer,* 49 Cal. 220; *McLaughlin* v. *Clausen,* 85 Cal. 322; Story on Contracts, sec. 29.) Defendant was relieved from performance by Roach's refusal to accept the money tendered. (Civ. Code, sec. 1511; *Northam* v. *Gordon,* 46

Cal. 582; *Gordon* v. *Swan,* 43 Cal. 564; *Wolf* v. *Marsh,* 54 Cal. 228.)   Time was of the essence of the contract, as the contract fixed the time for the sale of the land. (*Rector* v. *Price,* 1 Mo. 373; *Steele* v. *Branch,* 40 Cal. 3, 9; *Richmond* v. *Gray,* 3 Allen, 25; 1 Pomeroy's Equity Jurisprudence, sec. 355; *Grey* v. *Tubbs,* 43 Cal. 359; *Cleary* v. *Folger,* 84 Cal. 320; 18 Am. St. Rep. 187; *Martin* v. *Morgan,* 87 Cal. 207; 22 Am. St. Rep. 240; *Woodruff* v. *Semi-Tropic Land and Water Co.,* 87 Cal. 275; *Drew* v. *Pedlar,* 87 Cal. 443; 22 Am. St. Rep. 257; Story on Contracts, sec. 31; Waterman's Specific Performance, secs. 459, 641, 642.)   Evidence as to the value of the land exchanged was inadmissible, as inadequacy of value was not raised by the pleadings.   (Pomeroy's Equity Jurisprudence, sec. 926.)

*Spencer & Burchard,* and *Johnson & Chase,* for Respondent.

The value of the land at the time of the exchange was the proper subject of evidence, as it tended to establish the charge of fraud.   (*Saunders* v. *Clark,* 29 Cal. 304; 2 Story's Equity Jurisprudence, sec. 1531; Code Civ. Proc., sec. 1856.)   It was also admissible as showing the circumstances under which the contract was made, and the situation of the parties to it.   (Code Civ. Proc., secs. 1647, 1860; Civ. Code, sec. 3399; *Hildebrand* v. *Bloodsworth,* 12 Or. 75; *Mobile etc. R. R. Co.* v. *Jurey,* 111 U. S. 584; *Kyle* v. *Bellenger,* 79 Ala. 516.)   Time was not of the essence of the contract, as there was no such provision therein.   (2 Story on Contracts, sec. 970, and cases cited; *Brashier* v. *Gratz,* 6 Wheat. 533; 5 Lawson's Rights, Remedies, and Practice, sec. 2497, and cases cited; *Miller* v. *Steen,* 30 Cal. 402; 89 Am. Dec. 124; *Steele* v. *Branch,* 40 Cal. 10; *Cent. Pac. R. R. Co.* v. *Mudd,* 59 Cal. 587; *Miller* v. *Cox,* 96 Cal. 345.)   Equity will not enforce a forfeiture, where, as in this case, it would work an injustice.   (8 Am. & Eng. Ency. of Law, 449, 450; 2 Story's Equity Jurisprudence, sec. 1319; Pomeroy's Equity Jurisprudence, sec. 459; *Walker* v. *Wheeler,* 2 Conn. 299;

*Messersmith* v. *Messersmith*, 22 Mo. 369; *De Forest* v. *Bates*, 1 Edw. Ch. 394; *Hagar* v. *Buck*, 44 Vt. 285; 8 Am. Rep. 368; *Voorhis* v. *Murphy*, 26 N. J. Eq. 434; *Malcolm* v. *Allen*, 49 N. Y. 448; *Sanders* v. *Pope*, 12 Ves. 289; *Hill* v. *Barclay*, 18 Ves. 60.) When Blackwood conveyed the land he put it out of his power to do what he agreed, and thereby broke his contract. (Bishop on Contracts, sec. 1426, and cases cited; *Wolf* v. *Marsh*, 54 Cal. 232; *Luco* v. *De Toro*, 91 Cal. 405.)

VANCLIEF, C.—Action to cancel a note and mortgage made and executed by plaintiff to defendant, March 15, 1890, in connection with, and as part of, a transaction by which an exchange of lands between the parties was effected.

The judgment of the trial court was in favor of the plaintiff, and the defendant appeals from the judgment, and from an order denying his motion for a new trial.

The material facts, as found by the lower court, are substantially as follows:

The plaintiff owned 95 acres of land in Santa Clara county, subject to two mortgages, one to Roach for ten thousand dollars, drawing interest at 8½ per cent per annum, payable semi-annually, to mature November 14, 1892; and the other to Frink for $1,000, to become due May 15, 1890. The defendant owned a tract of 840 acres of unencumbered land, situate in Tehama county. On March 15, 1890, an exchange of these lands was effected in the following manner: Each executed to the other a deed of his land, the conveyance of the Santa Clara land to defendant being subject to, and defendant assuming the payment of, the said mortgages thereon. The plaintiff having represented that his 95 acres was worth $225 dollars per acre, aggregating $21,375, and defendant desiring to realize that price, it was agreed that the land should be sold for a sum not less than $21,375 ($225 per acre, and that defendant should pay out of that sum the Roach and Frink mortgages, and that he would advance to plaintiff $1,000 at the time of

the trade, which he did, and that this advancement of
$1,000 should be considered a loan in case the land
should not sell for the price of $21,375, otherwise to be
considered paid from the proceeds of the sale.    The
plaintiff, on his part, agreed to guarantee that the land
would sell for $21,375 if put upon the market according
to the agreement; and as collateral security for the per-
formance of this guaranty, and for no other purpose or
consideration, plaintiff, contemporaneously with the ex-
ecution of the exchange deeds, and as a part of the same
transaction, executed the mortgage in question for the
sum of $9,550, upon the land in Tehama county, con-
veyed to him by defendant.    On the same day, and as
part of the same transaction, the parties executed the
following written agreement:

" This agreement, made and entered into this fifteenth
day of March, 1890, between Wm. C. Blackwood and
Frank P. Beverly, that the said Wm. C. Blackwood is to
allow the said tract of ninety-five acres, near the town
of Old Mountain View, deeded to him this day by
Frank P. Beverly, to be sold in tracts to suit, and should
any cash payments be made on such sales then the
same shall be applied on the mortgage now held by
Wm. C. Blackwood against the said Frank P. Beverly,
as said mortgage is to be paid out of the sale of the
said ninety-five acres of land, the price of said land to
be $225 per acre, and such portion as may be sold on
deferred approved payments whereir. the same shall
draw a rate of interest, then said interest received from
such sales shall be applied to the interest on the mort-
gage now held by Wm. C. Blackwood from Frank P.
Beverly.    The time of making such sale to the first day
of December, 1890.    Said Beverly agrees to keep place
in good order and repair during the existence of this
contract.                    [SEAL]    WM. C. BLACKWOOD,
                        " [SEAL]    F. P. BEVERLY.
    " Witness:
        " N. K. Spect."

Two days later the defendant complained to plaintiff that this agreement was imperfect, as not expressing the understanding of the parties, and asked that it be modified. To this request the plaintiff assented, and thereupon the following, drawn by or for the defendant, was substituted:

"This agreement, made and entered into the seventeenth day of March, 1890, between Wm. C. Blackwood, the party of the first part, and Frank P. Beverly, the party of the second part: That for and in consideration of a certain sale and exchange, made between the within named parties, the said party of the first part agrees to take up certain mortgages of $11,500, now standing against the lands deeded to him by the said party of the second part, provided the party holding the same will accept his money. Then the said party of the first part is to place said tract of ninety-five acres in the hands of W. R. Mathews and N. K. Spect to at once place on the market in tracts to suit purchasers, at not less than $250 per acre, or as much more as they may obtain on said sale per acre, and in the event of any sales the said party of the first part shall receive the sum of $23,000, simply holding as collateral security until the within named $23,000 is paid a mortgage on the 840 acres of the party of the second part, of $9,550, but at any time that the party of the first part shall receive the within named $23,000 with interest on $11,500 of that amount, with interest at 8½ per cent per annum, the mortgage holding (holden) against the lands of the party of the second part shall be released by the holder of the same. The terms of such sale shall be one-third cash and the balance secured by mortgage on said land at 8 per cent per annum, said interest payable annually, and when the said party of the first part shall receive the sum of $8,000 cash and a mortgage for balance on said tract of land, drawing interest at the rate 8 per cent per annum, then he is to release the mortgage of $9,550, which he now holds against said party of the second part. The time of such sale is to be made on or before

the first day of December, 1890, unless otherwise
agreed to by both parties. All former contracts between
said parties are this day canceled.

> " Wm. C. BLACKWOOD,
> " F. P. BEVERLY.

" Witness:

> " N. K. Spect."

It will be observed that this modified agreement is
not only more explicit than the first, but materially
differs from it, in that the Santa Clara land is to be sold
for the price of $250 per acre, from the proceeds of
which defendant was to receive $23,000 with interest on
$11,500 thereof, out of which he was to satisfy the mort-
gage in question.

The court found that the defendant could have sold
the Santa Clara land within the period specified in the
agreement for a much larger sum than $23,000, to wit,
$25,000, and was requested and urged by plaintiff to do
so, but that he refused to sell or to permit a sale at that
price; and that his only excuse for so refusing to sell
was that Roach would not accept the principal and the
then accrued interest as satisfaction of his mortgage, but
demanded interest up to the date at which the note and
mortgage would mature—November 14, 1892.

It is claimed for appellant that he was not bound to
sell the Santa Clara land, unless, before December 1,
1890, Roach would accept, as satisfaction of his mort-
gage, a sum equal to the principal and accrued interest;
and is further contended that the time mentioned in
the agreement within which the sale should be made
was of the essence of the contract, and therefore defend-
ant was not bound to sell at any price after December
1, 1890, but was at liberty to keep the land, and yet hold
and enforce his mortgage for $9,500 on plaintiff's land
in Tehama county. This is the theory of his defense,
and of his cross-complaint, by which he seeks to fore-
close his mortgage on the Tehama county land in this
action. And, accordingly, it is found that before the
trial of the action he conveyed the Santa Clara land to

his daughters by deeds of gift, and thus put it out of his power to sell that land at any price.

That the conclusion drawn from this theory works a gross injustice upon the plaintiff is not denied, but counsel for appellant say in their brief that the apparent injustice results from the facts that the Tehama land has greatly depreciated in value, while the value of the Santa Clara land has increased, since the exchange; but this is negatived by the findings of the court, amply justified by the evidence. The court found that, at the date of the exchange, the market value of the Tehama land was only $4,200, and that it has never since been of any greater value; and that the Santa Clara land, at the time of the exchange, had a market value of $25,000, and has continued to be of that value ever since. It does not appear that there was any express estimate of the value of the Tehama land at the time of the exchange, but it may fairly be inferred that it was estimated to be worth about $9,500.

The point that the time mentioned in the contract within which the Santa Clara land should be sold was of the essence of the contract is not supported by the language of the contract, besides being inconsistent with the extrinsic facts and circumstances which may be properly considered as helps to the construction of that language. It is not declared in the contract that time shall be of the essence of the contract, and there is no limitation of the time within which the contract for the release of the mortgage on the Tehama land must be performed, and no provision that it should become an independent charge upon the Tehama land if the Santa Clara land was not sold within a limited period. On the contrary, the contract expressly provides that that mortgage was held simply " as collateral security *until the within-named $23,000 is paid,*" and that, " at *any time* the party of the first part shall receive the within-named $23,000, with interest on $11,500 of that amount at the agreed rate of 8½ per cent per annum," or "when the said party of the first part shall

receive the sum of $8,000 cash, and a mortgage for the balance on said tract of land drawing interest at the rate of 8 per cent per annum, *then* he is to release the mortgage of $9,500 which he now holds against the said party of the first part." The general rule of equity is, that time is not of the essence of the contract, unless it clearly appears from the terms of the contract, in the light of all the circumstances, that such was the intention of the parties. (*Steele* v. *Branch*, 40 Cal. 11.) But if time was of the essence of the contract, the defendant was the only party in default, and can take no advantage from his own wrong. (*Newton* v. *Hull*, 90 Cal. 493.)

But it is claimed that the defendant was not in default because he was not bound to sell unless Roach would accept the principal and the accrued interest as satisfaction of his mortgage. But I think this is a mistake. Roach demanded only what he was entitled to by the terms of his mortgage, which terms were known to defendant at the date of his agreement with plaintiff, of March 17, 1890, the language of which is, "the said party of the first part agrees to take up certain mortgages of $11,500 now standing against the lands deeded to him by the said party of the second part, *provided* the party holding the same will accept his money." How much money? Undoubtedly, so much as he was entitled to receive. There is no pretense that Roach refused to accept as satisfaction of his mortgage what he was entitled to receive, or that he demanded more. The difference between what Roach asked and what defendant offered was the interest on the interest, to be paid in advance, which was more than compensated by the increased price which plaintiff was offered for the land, over and above the price named in the contract.

The judgment rests firmly upon the equitable maxim that "that which ought to have been done is to be regarded as done, in favor of him to whom, and against him from whom, performance is due" (Civ. Code, sec. 3529), as applied in *Daggett* v. *Rankin*, 31 Cal. 327, where it is said: " That equity looks upon things agreed

to be done as actually performed; the true meaning of which is that equity will treat the subject matter as to collateral consequences and incidents in the same manner as if the final acts contemplated by the parties had been executed exactly as they ought to have been."

The defendant could and ought to have sold the Santa Clara lands for the price and within the time contemplated by the parties, and satisfied the mortgage in question from the proceeds of the sale, as he agreed to do; but instead of doing so he elected to hold the lands, and to give them to his daughters, and thereby to put it out of his power to perform his contract; therefore, the mortgage on the Tehama lands should be deemed satisfied, as it ought to have been, and the judgment being to this effect is clearly right.

Some points are made upon the admissibility of evidence on the ground of irrelevancy; but all the evidence objected to, if not relevant to the issues upon the decision of which the judgment depends, were relevant to the issue of fraud upon which the court found for defendant. Evidence as to the value of the lands at the time of the exchange was most earnestly objected to, but it was not only relevant to the issue of fraud, but was relevant as a circumstance to be considered in construing the contract.

I think the order and judgment should be affirmed.

HAYNES, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion, the judgment and order appealed from are affirmed.

McFARLAND, J., FITZGERALD, J., DE HAVEN, J.